IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

KENNETH STAFFORD,

    Plaintiff,

vs.

TROOPER JOSEPH B. MORRIS;
TROOPER DANIEL HARRIS; TROOPER
JOSEPH YURAN; TROOPER RONALD
FLAGLEY; CORPORAL DANIEL
SINDLINGER; AND JOHN DOES 1-10

    Defendants,

2:17-CV-00749-MJH

## OPINION

Plaintiff, Kenneth Stafford, brings 42 U.S.C. § 1983 claims, asserting violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. He bases his claims upon allegations that Defendants' actions constituted malicious prosecution, false arrest, and false imprisonment. (ECF No. 21). Pending before the Court is a Motion for Summary Judgment, filed by Defendants, Ronald Flagley, Daniel Harris, Joseph B. Morris, Daniel Sindlinger, and Joseph Yuran.[1] (ECF No. 45). Upon consideration of the Amended Complaint (ECF No. 21); Defendants' Answer and Affirmative Defenses (ECF No. 26); Defendants' Motion for Summary Judgment, Brief in Support, Appendix, and Concise Statement of Material Facts (ECF Nos. 45-48); Plaintiff's Brief in Opposition, Plaintiff's Response to Defendants' Statement of Facts, and Plaintiff's Supplemental Statement of Facts (ECF No. 57);

---

[1] In his Brief in Opposition to Defendants Motion for Summary Judgment, Mr. Stafford has withdrawn his claims as to Defendants, Daniel Harris, Joseph Yuran, Ronald Flagley, and Dan Sindlinger. (ECF No. 57). Accordingly, as regard Defendants, Harris, Yuran, Flagley, and Sindlinger, they will be dismissed from the case with prejudice, by separate order

Defendants' Response to Plaintiff's Statement of Material and Disputed Facts (ECF No. 62); Defendants' Reply Brief (ECF No. 63); and the arguments of counsel, Defendants' Motion for Summary Judgment is granted.

## I. Background

On or about February 24, 2015, Trooper Daniel Harris of the Pennsylvania State Police responded to an incident of attempted child luring, as reported by two children (the "First Victim" and the "Second Victim"). (ECF No. 48 at ¶¶ 1-2). The two children were walking to the bus stop when a man, driving a dark green pickup truck, approached them and offered them a ride. *Id.* at ¶3. The children described the perpetrator as a white male, in his 50s, with a thin build, short brown hair, a "mostly gray full bushy beard," who was wearing a brown baseball hat and "transition" style glasses. *Id.* One of the children stated that the same man, driving a dark green pickup truck, had approached her a few weeks earlier. *Id.* Trooper Harris completed his report, but he had no other involvement in the investigation. *Id.* at ¶ 4.

On or about April 6, 2015, Trooper Joseph Yuran responded to an attempted child luring incident, wherein a child ("Third Victim") told Trooper Yuran that an "old white man in a white truck stopped him and asked him if he wanted any candy." *Id.* at ¶ 5. The child further described the man as "wearing a brown baseball cap, glasses and having a 4-inch-long salt and pepper beard." *Id.* Trooper Yuran thereafter prepared a report, and later spoke to Corporal Sindlinger about this incident. *Id.* at ¶ 6 and ECF No. 47-3 at p. 8.

On or about April 13, 2015, Corporal Daniel Sindlinger responded to an attempted child luring incident, wherein the child ("Fourth Victim") described a white man in a white truck asking for help looking for his dog. *Id.* at ¶ 7. The child described the man as a male in his 40s to 50s, with salt and pepper hair, and a goatee. *Id.* In his report, Corporal Sindlinger indicated

2

that he learned of the other incidents from speaking with Trooper Yuran. (ECF No. 47-3 at p. 8). In his report, Corporal Sindlinger noted the Fourth Victim identified a white pickup truck, and later learned of an incident involving a tan pickup truck. *Id.* at ¶ 8. When later deposed about his report, Corporal Sindlinger testified that he had no explanation for why he reported a tan pickup, when no such color had been identified by any of the interviewed victims. (ECF No. 57-1 at ¶ 8).

On April 15, 2015, Mrs. Stafford reported to the Pennsylvania State Police that her husband, Kenneth Stafford, was missing from their home. (ECF No. 48 at ¶¶ 10, 11). Mr. Stafford left a note for his family, indicating that stress had brought him to "his breaking point," and he "was having crazy thoughts go through his head." *Id.* at ¶¶ 10, 11. Trooper Flagley responded, and he completed a missing person incident report. *Id.* at ¶¶ 12-13. Mrs. Stafford also provided Trooper Flagley with a physical description of Mr. Stafford. (ECF No. 57-7 at Ex. I).

Another Trooper, Trooper Morris, continued to investigate the child luring incidents as had been reported upon by Troopers Harris, Yuran, and Sindlinger. During the course of his investigation, Trooper Morris learned at "roll call" that Mr. Stafford had been reported missing. *Id.* at ¶ 14-15. Based upon the similarity between Mr. Stafford's physical characteristics and the children's descriptions of the perpetrators, and because of temporal proximity of Mr. Stafford's disappearance and publication of a press release regarding the child luring incidents, Trooper Morris developed an interest in Mr. Stafford as a suspect. *Id.* Trooper Morris developed a photo lineup of individuals, who looked similar to the photo of Mr. Stafford. (ECF No. 48 at ¶ 16). Trooper Morris then presented the photo lineup to the child victims. *Id.* One of the victims, the Third Victim, identified Mr. Stafford as the perpetrator in the photo lineup. *Id.* at ¶ 17.

3

Trooper Morris then obtained a Google Earth photo of Mr. Stafford's residence, which showed a tan or green pickup truck, and a white pickup truck. *Id.* at ¶18. The two trucks were owned by Mr. Stafford and his son. *Id.* Mr. Stafford owned a champagne colored 1999 Ford pickup, while his son owned a white 1999 Chevrolet pickup. *Id* at ¶¶ 19-20. Trooper Morris completed a criminal complaint, with an executed affidavit of probable cause ("the Affidavit"), which included summaries of reports from the other troopers, a report that the Third Victim positively identified Mr. Stafford in the photo lineup, and information regarding the two pickup trucks at Mr. Stafford's residence. *Id.* at ¶ 21. Trooper Morris submitted the Complaint and Affidavit to the local magistrate, who issued an arrest warrant on April 20, 2015. *Id.* Mr. Stafford was arrested and charged with two felony counts of child luring (18 Pa.C.S. § 2910), one misdemeanor count of child luring (18 Pa.C.S. § 2910), and one count of flight to avoid apprehension or punishment (18 Pa.C.S. § 5126). (ECF No. 57-7 at Ex. J). Following a trial, the jury returned a verdict of not guilty on all charges. *Id.* at Ex. K.

## II. Standard of Review

### a. General Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### b. Summary Judgment and Probable Cause

The United States Court of Appeals for the Third Circuit has noted the "tension inherent in evaluating probable cause at the summary judgment stage." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016). At the summary judgment stage, conflicting evidence of a material fact negates the entry of summary judgment, but the "probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence." *Id.* Thus, when examining probable cause at the summary judgment stage, the Third Circuit Court explained that, although courts "view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider." *Id.* The *Dempsey* Court instructed that instead, courts should "view *all* such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred." *Id.* (emphasis in original). The Court

5

explained that "[o]nly then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate." *Id.* Accordingly, when assessing probable cause, "the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard." *Id.*

While the question of probable cause is generally left to the jury, a court may conclude that probable cause exists as a matter of law "if the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding." "A 'common sense' approach [must be taken] to the issue of probable cause' and a determination as to its existence must be based on the 'totality of the circumstances.'" *Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016).

### III. Discussion

Mr. Stafford argues that Trooper Morris's Affidavit in support of the arrest warrant contains materially false statements and reckless omissions of material facts, which renders the warrant invalid. For Mr. Stafford to sustain his Malicious Prosecution, False Arrest, and False Imprisonment claims, he is required to prove that he was arrested without probable cause. To prove malicious prosecution under Section 1983, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) **the proceeding was initiated without probable cause**;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (emphasis added). Similarly, in a Section 1983 claim for either false arrest or false imprisonment under the Fourth Amendment, a plaintiff must show:

6

> (1) that there was an arrest; and
> **(2) that the arrest was made without probable cause.**

*James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted) (emphasis added). "An officer has probable cause to arrest when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Torres v. Borough of Barrington*, No. 16-cv-06134, 2017 WL 3189448, at *3 (D.N.J. July 27, 2017) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). Trooper Morris argues that he had probable cause for Mr. Stafford's arrest.

In addition, Trooper Morris contends that he has qualified immunity from this lawsuit, because Mr. Stafford's arrest and prosecution was supported by probable cause, such that there was no constitutional violation. "'[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (citations omitted). Therefore, since Mr. Stafford's false arrest and malicious prosecution claims hinge upon an absence of probable cause, the alleged constitutional violation at issue turns on whether "a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time." *Id.* Accordingly, the qualified immunity defense coincides with the merits of Mr. Stafford's claims. A finding of probable cause would, therefore, entitle Trooper Morris to qualified immunity to bar Mr. Stafford's claims, because Mr. Stafford cannot establish an essential element of his claims if he does not prove that there was no probable cause for Trooper Morris's action against Mr. Stafford.

### A. Applicable Law

In evaluating whether an officer's affidavit establishes probable cause, the court focuses its analysis on whether the officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). As set forth by the Third Circuit:

> we must concentrate on two elements: first, whether "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, whether those assertions or omissions were 'material, or necessary, to the finding of probable cause.'"

*Andrews*, 853 F.3d at 697 (quoting *Dempsey*, 834 F.3d at 468–69) (other citations omitted). As regards the first element, the Third Circuit has explained that "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Wilson*, 212 F.3d at 783. For the second element, the materiality of the omissions is determined by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789, citing *Sherwood*, 113 F.3d at 399.

The Third Circuit has clarified that "when a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit." *Dempsey*, 834 F.3d at 470. Thus, the three-step procedure the Court must follow is:

> First, we assess the evidence the plaintiff asserts were recklessly omitted or recklessly asserted from the affidavit. Next, we reconstruct an affidavit that

8

> includes any recklessly omitted information. And finally, we assess the
> materiality of the omitted information to the probable cause determination.

*Id.*

### 1. Reckless omission

To determine whether information was recklessly omitted, the Court asks whether the officer withheld "a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 788) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993))).

> Inherent in this inquiry are two requirements. First, the officer must have knowledge of the information alleged to have been recklessly omitted. For this reason, we look only to the information available to the officer at the time of the swearing of the affidavit of probable cause. Second, the information must be relevant to the existence of probable cause. The relevance requirement "ensures that a police officer does not 'make unilateral decisions about the materiality of information'" by enabling a magistrate to decide independently, on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause. [*Reedy v. Evanson*, 615 F.3d 197,] 213 [(3d Cir. 2010)] (quoting *Wilson*, 212 F.3d at 787). At the same time, however, it recognizes that for practical reasons courts simply "cannot demand that police officers relate the entire history of events leading up to a warrant application." *Wilson*, 212 F.3d at 787.

*Dempsey*, 834 F.3d at 471. In doing so, the Court exercises "scrupulous neutrality"; the Court does "not engage the 'deliberately slanted perspective' it must use to make the ultimate determination as to whether summary judgment is appropriate." *Id.* (quoting *Reedy* 615 F.3d at 214 n. 24).

### 2. False assertions

"Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth." *Wilson*, 212 F.3d at 788. "In applying the reckless disregard test to assertions, [the Third Circuit] [has] borrowed from the free

9

speech arena and equated reckless disregard for the truth with a 'high degree of awareness of [the statements'] probable falsity.'" *Id.* (quoting *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir, 1993 (other citation omitted). "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)).

### B. Trooper Morris's Affidavit of Probable Cause

Mr. Stafford contends that Trooper Morris recklessly omitted facts from the affidavit of probable cause, and made reckless misleading assertions of fact, as to the following categories: the physical description of the perpetrator(s), the descriptions of hair and beard, information received from Mr. Stafford's family, the photographic lineup, and description of the vehicles. He argues that the omissions and false statements are material, because, had Trooper Morris added the omitted information to his affidavit and corrected his misleading and false statements, the Affidavit would not have established probable cause for the issuance of the warrant to arrest Mr. Stafford. To analyze whether or not Trooper Morris had probable cause, the Court must determine whether the officer's omissions or false statements were made with a reckless disregard for the truth. *Andrews*, 853 F.3d at 697. If so, the Court then considers, with the aid of a reconstructed affidavit, whether the omissions and misleading assertions were material. *Id.*

In his Brief in Opposition (ECF No. 57), Mr. Stafford produced a proposed reconstructed affidavit to support his argument that the omissions and misleading assertions were material. For purposes of considering Mr. Stafford's argument, that his reconstructed affidavit, when viewed in a light most favorable to him for purposes of summary judgment would have precluded a finding of probable cause, this Court initially assumes that Trooper Morris's

10

omissions and false statements from his affidavit were made with reckless disregard for the truth. If the materiality analysis leads to the conclusion that the alleged omissions and false statements were material, then this Court will assess whether said omissions and statements were made with reckless disregard for the truth.

To determine materiality, the Court determines whether any omitted facts and false assertions would establish probable cause. *See Wilson*, 212 F.3d at 789. Mr. Stafford's proposed reconstructed affidavit is as follows[2]:

> On 2/24/2015, Tpr. HARRIS, PSP Mercer was assigned to respond to 82 Piersons Road, Perry Twp. Mercer County. Upon his arrival, he spoke with a juvenile female, 12 yoa and a juvenile male, 8 yoa who reported to him that earlier in the day when they arrived home from school, a male subject pulled his vehicle up alongside them as they were walking down Pierson's Road near the intersection of Beatty School Road. They indicated that the male asked them if they wanted a ride. They indicated that they didn't answer and continued on to their residence as the subject drove away. They indicated that approximately two weeks earlier, they were walking home from in the same manner (sic) after school in the same area when the same male subject in the same vehicle stopped near then (sic) and yelled, "hey little boy!" They related that they didn't answer the subject and hurried to their residence as he drove away. They described the subject as a white male, **[thin build]** approximately 50 yoa, ~~gray~~ **[brown]**hair with a gray beard wearing transition style glasses wearing a brown baseball cap. They indicated that the subject both times was operating a dark green ~~or brown~~ pickup truck. They related that the truck smelled strongly of cigarettes and had trash on the dashboard.
>
> On 04/07/2015, Tpr YURAN was assigned to respond to 236 Beatty School Road, Perry Twp. Mercer County. Upon his arrival, Tpr. YURAN met with a juvenile male, 9 years of age with his parents. The male indicated that on 04/06/2015 at approximately 2000 hours, he was standing out in his front yard watching deer in a field across the street. The juvenile related that he observed a vehicle pull up to his position and and (sic) the male operator of the vehicle looked at him for a few seconds before speaking to him. The juvenile indicated that the male said, "do you want some candy?" The juvenile related that he became frightened and hurried towards his residence. He related that the vehicle drove away. The juvenile described the male as an older **[thin]** white male **[with salt and pepper hair; hair that was turning grey]** with ~~a gray or mostly gray~~ beard wearing a brown baseball cap. **[He related that the subject's beard was 3 to 5**

---

[2] The bolded words represent where the Plaintiff has inserted alleged material omissions. Strikethrough text indicates where the Plaintiff claims materially false assertions were made. The Court has also reproduced the affidavit with its spelling and grammatical errors.

11

**inches in length around the chin, but much shorter in length on the sides and closer to the ears.]** He related that the subject was driving a white pick up truck. **[However, he also related that he did not pay that close attention to the subject.]**

On 04/13/2015, Cpl. SINDLINGER, PSP Mercer was assigned to respond to 205 Beatty School Road. Upon his arrival, he met with a 14 year old (sic) juvenile female and her mother. The juvenile indicated that at approximately 1720 hours on this date, she was outside the residence in the front yard cleaning up dog feces. She related that she walked across the road to discard the feces and walked back into the front yard when she observed a vehicle pull up on Beatty School Road near her. She related that a male subject in the vehicle said to hear, "I'm looking for my lost dog, will you help me find him?" She related that he asked her to get into the vehicle. She related that she refused and he said, "please, I really miss him." She related that at that time, he (sic) large dog came around the residence and began barking at the subject. She related that the subject sped away at a high rate of speed as she turned to run inside her residence, locking her door behind her. She described the subject as a white male in his fifties, salt and pepper hair, salt and pepper gotee (sic) which was longer. She related that the male was operating a white extended cab pickup truck when he fled west one Beatty School Road towards Greenville, PA.

It was observed that the three aforementioned residences are with site (sic) of one another.

On 04/14/2015, a press release was submitted to local news media regarding these incidents including a description of the actor and the vehicles involved.

On 04/15/2015, Tpr. FAGLEY was assigned to respond to 3785 Perry Hty(sic), Sandy Creek Twp. Mercer County for the report of a missing endangered person. Upon his arrival, he spoke with Doreen STAFFORD who indicated that she came home and found a note left by her husband, Kenneth STAFFORD, indicating that he had left and was not returning. The note eluded to suicide, but was not clear. K. STAFFORD state (sic) in the note that he was having "crazy thoughts" and didn't know how to handle them. D. STAFFORD related that K. STAFFORD had gone that day and renewed his motorcycle registration which was not to expire for several months. She related that he had withdrawn a considerable amount of money from the bank and taken his medications with him. She related that he had apparently left on his motorcycle and taken two hand guns with him. D. STAFFORD provided a physical description of K. STAFFORD. ~~Several other family members were present who indicated that this was not like K. STAFFORD do (sic) leave like this and had no idea why he would do this.~~ **[D. STAFFORD communicated that K. STAFFORD had health problems over the past year, that D. STAFFORD and K. STAFFORD had been fighting lately. Brian STAFFORD, K. STAFFORD'S son, also communicated that K. STAFFORD was overly stressed with D. STAFFORD recently and that there had been arguments.]** Tpr. FAGLEY took a missing/endangered persons's (sic) report and entered K. STAFFORD into NCIC as a missing and engangered (sic) person. Later on this date, Tpr. Fagley received a phone call from Brian STAFFORD, K. STAFFORD'S son, who indicated that they had looked on K. STAFFORD'S computer located at the residence and discovered that prior to leaving, K. STAFFORD had conducted a search for direction to Elk City, Oklahoma.

12

    It was determined that ~~the physical description provide by D. STAFFORD and the description provided by the juveniles were very similar.~~ **[K. STAFFORD is a White Male, age 59, with a heavy build, weighing approximately 240 pounds. From a review of K. STAFFORD's driver's license, K. STAFFORD has fully grey hair and presents with a close-cropped goatee.]**
    **[On 04/18/2015, Brian STAFFORD communicated to Tpr. FAGLEY that the STAFFORD family had spoken with K. STAFFORD, who was returning home.]**
    On 04/18/2015, a photographic line up was completed which contained the photograph of Kenneth STAFFORD.
    **[On 04/19/2015 at approximately 1550 hours, I presented this line up to the 14-year-old juvenile female at 205 Beatty School Road. After carefully reviewing the photographs for approximately 30-40 seconds, the juvenile indicated that the subject looked similar to two images in the line up, pointing to K. STAFFORD and another individual.]**
    On 04/19/2015 at approximately 1609 hours, I presented this line up to the 9 year old (sic) juvenile male at 236 Beatty School Road. After carefully reviewing the photographs for approximately 15 seconds, the juvenile immediately pointed to K. STAFFORD'S picture and said, "that's him." I asked him how he knew this person in the photograph. He stated, "that's the guy in the truck that I told police about." I told the juvenile if he was one hundred percent positive to circle the picture. He did and signed his name below it. **[I did not take any steps to ensure that the 9-year-old juvenile understood the difference between truth and lies.]**
    **[On 04/19/2015 at approximately 1615 hours, I presented this line up to the 12-year-old juvenile female at 82 Piersons Road, who saw the subject on two occasions. After carefully reviewing the photographs for approximately 30 seconds, the juvenile she did not recognize anyone in the lineup.] [I did not present this line up to the 8-year-old juvenile male at 82 Piersons Road.]**
    On 04/20/2015, a satellite image was obtained from Google Earth of K. STAFFORD'S residence. From this image, I was able to view what appeared to be a tan or green pick up truck and a white extended pick up truck parked in the driveway of the residence.

(ECF No. 57 at pp. 15-18).

  The Affidavit contained the victim descriptions of the perpetrator as being thin, having brown, salt and pepper, or "turning gray," hair, that he had a beard 3 to 5 inches in length around the chin, and shorter in length on the sides and close to the ears, and that he was driving a dark green pickup. The Affidavit also contained Mr. Stafford's description as being a white male, age 59, weighting about 240 pounds, and with a heavy build. In addition, the Affidavit noted that Mr. Stafford's driver's license photo shows him with fully gray hair and a close-cropped goatee. The Plaintiff's reconstructed affidavit incorporates additional and corrected information that was

13

provided to Trooper Fagley by Mr. Stafford's family, plus a more complete description of the photographic lineups.

Following careful consideration of the totality of the reconstructed affidavit and excluding all alleged misstated representations that Mr. Stafford has stricken from Trooper Morris's Affidavit, this Court finds that a neutral, detached magistrate, reviewing the reconstructed affidavit in a common-sense manner and considering all the circumstances, would conclude that probable cause to arrest Mr. Stafford had been established in light of the multiple and substantially consistent reports from the victims, the proximity of the incidents, and the close connection between the media report of the child luring incidents and Mr. Stafford's disappearance. Further, Victim Three's positive identification of Mr. Stafford from the photographic line-up weighs heavily in favor of this determination.

With regard to victim witnesses, a victim's identification of a party as the perpetrator may validly provide probable cause to charge that party. *See Wilson* 212 F.3d at 790-91 (victim identification constitutes probable cause). "When an officer has 'received his information from some person-normally the putative victim or an eye witness-who it seems reasonable to believe is telling the truth,' he has probable cause." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986), cert. denied 481 U.S. 1028 (1987); *see also Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991). The Third Circuit has cited *Gramenos* with approval in holding that it was reasonable for the police to believe an eyewitness was telling the truth when they initiated the prosecution. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782 (3d Cir.2000); *See also Sharrar v. Felsing*, 128 F.3d 810, 818–19 (3d Cir. 1997); *Waters v. Cheltenham Twp.*, 700 F. App'x 149, 153 (3d Cir. 2017).

The Third Circuit has held that victim witness statements are typically sufficient to establish probable cause in the absence of "[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability" that "outweigh[s]" the probable cause that otherwise exists." *Wilson*, 212 F.3d at 790; *Sharrar*, 128 F.3d at 818 ("When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest."). The Third Circuit has held that no reasonable jury could find a lack of probable cause where a victim identified the arrestee in a photo array, but other evidence suggested the perpetrator was significantly taller than the arrestee, a different victim did not identify the arrestee, and another witness claimed to have seen the arrestee at the time of the crime, *Wilson*, 212 F.3d at 791-92. The Court has also found probable cause where a victim first identified a different person as her assailant before changing her story to identify the arrestee, *Sharrar*, 128 F.3d at 818-19. Thus, some "unreliability or exculpatory evidence" will not "fatally undermine[ ]" probable cause otherwise established. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir. 2016).

Here, the Third Victim positively identified Mr. Stafford in a photographic lineup. Although Plaintiff suggests, the reconstructed affidavit should have included language that Trooper Morris did not take any steps to ensure that the Third Victim, a 9-year-old juvenile, understood the difference between truth and lies, the absence of such information does not support that the Third Victim was inherently unreliable or that Trooper Morris had a reason to believe that the Third Victim's identification was not reliable. The absence of such representation in the affidavit also does not support Plaintiff's argument that the Second Victim had a made a mistake in his positive photo identification. Further, Mr. Stafford cites no legal authority to establish that Trooper Morris was required to take additional steps to ensure that the Third Victim understood

15

the difference between truths and lies in relation to an affidavit of probable cause.[3] Review of the reconstructed Affidavit does not extinguish the probable cause that was created by the Third Victim's positive photo identification of Mr. Stafford. The Third Circuit has stated that "independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." *Wilson* 212 F.3d at 790. However, in the present case, the reconstructed affidavit does not present independent exculpatory evidence that the Third Victim was inherently unreliable.

After considering all of the added-in omissions and discounting all stricken alleged misstatements within the reconstructed affidavit, there is no question of material fact presented. The omissions and misstatements were not material or necessary to the finding of probable cause. The variations regarding the descriptions of the perpetrator, as compared to Mr. Stafford's characteristics, were minimal. Under the totality of circumstances, such discrepancies, even assuming they were recklessly made, would not affect the existence of probable cause in this case. In addition, none of the information provided by Mr. Stafford's family was inconsistent with, or exculpatory, as to Mr. Stafford having apparently fled the area shortly after the media reported the child luring incidents. The Court finds that no reasonable jury could conclude that the reconstructed affidavit failed to establish a "fair probability" that a crime occurred and that Mr. Stafford was the perpetrator of the crime. Thus, the purported omissions and/or misstatements were not material.

---

[3] The Pennsylvania Superior Court has stated that "[w]e know of no law [...]that courts must specifically evaluate a child informant's "competency" while reviewing an affidavit of probable cause. *Com. v. Adams*, No. 1459 MDA 2015, 2016 WL 2991061, at *7 (Pa. Super. Ct. May 24, 2016).

## IV. Conclusion

The Court concludes that Trooper Morris's Affidavit in support of his application for an arrest warrant did not contain material omissions or false statements of fact, which would defeat the finding of probable cause by the magistrate court. Thus, Trooper Morris had probable cause to file his complaint, and the warrant was properly issued. The warrant, which was issued, was valid. Therefore, Mr. Stafford cannot establish an essential element of his claims for malicious prosecution, false arrest, and false imprisonment. Accordingly, Defendants' Motion for Summary Judgment is granted. Judgment is entered in favor of Defendants and against the Mr. Stafford on Count I of the Amended Complaint. A separate Order will be entered consistent with this opinion.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge